MICHAEL W. MELENDEZ (No. 6741)
E-mail: mmelendez@mvlawgroup.com
MELENDEZ & VACA, LLP
1850 Mt. Diablo Boulevard, Suite 470
Walnut Creek, CA 94596
Telephone: (925) 256-8706
Facsimile: (925) 256-6761

DAVID MINCIN (No. 5427)
E-mail: dmincin@lawlasvegas.com
RICHARD MCKNIGHT, P.C.
330 South Third Street, Suite 900
Las Vegas, NV 89101
Telephone: (702) 388-7185
Facsimile: (702) 388-0108

Attorneys for Defendant
MT. HAWLEY INSURANCE COMPANY,
erroneously sued herein as RLI Insurance
Company d/b/a Mt. Hawley Insurance Company

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAYNES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>RLI INSURANCE COMPANY d/b/a MT. HAWLEY INSURANCE COMPANY; DOES DEFENDANTS I-X, inclusive and ROE CORPORATIONS I-X, inclusive,<br><br>Defendants. | No. CV-S-06-00620-BES-LRL<br><br>MT. HAWLEY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO JAYNES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND TO EXCLUDE DEFENSE EXPERT AND REPORT, AND IN SUPPORT OF MT. HAWLEY'S MOTION FOR SUMMARY JUDGMENT |

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . 1

FACTUAL BACKGROUND . . . . . 2

I. THE UNDERLYING ACTION . . . . . 2

II. MT. HAWLEY'S INVESTIGATION . . . . . 2

A. Mt. Hawley's Named Insured Informs Mt. Hawley That The Conditions Causing Ms. Fee's Injuries Resulted From Soil Settlement . . . . . 2

B. Mt. Hawley Retains A Licensed Professional Engineer To Confirm That Ms. Fee's Injuries Resulted From Soil Settlement . . . . . 3

C. Mt. Hawley Requests, But Jaynes Does Not Provide, Evidence Disputing That Ms. Fee's Injuries Resulted From Soil Settlement . . . . . 4

III. THE MT. HAWLEY INSURANCE CONTRACT . . . . . 4

ARGUMENT . . . . . 5

I. MT. HAWLEY PROPERLY RELIED ON EXTRINSIC EVIDENCE IN DETERMINING THAT IT HAS NO DUTY TO DEFEND JAYNES IN THE *FEE* ACTION . . . . . 5

II. THE UNDISPUTED EVIDENCE DEMONSTRATES CONCLUSIVELY THAT THE "EARTH MOVEMENT" EXCLUSION APPLIES . . . . . 7

A. The Earth Movement Exclusion Precludes Coverage For Any Claim With A Causal Connection Between The Injury And The Earth Movement . . . . . 7

B. Mt. Hawley's Named Insured Stated, And Documentary Evidence Confirms, That Soil Settlement Caused The Asphalt To Crack And Become Uneven . . . . . 7

C. A Licensed Professional Engineer Further Confirmed That Soil Settlement Caused The Asphalt To Crack And Become Uneven . . . . . 8

III. JAYNES HAS NO EVIDENCE DEMONSTRATING THAT THE EARTH MOVEMENT EXCLUSION DOES NOT APPLY . . . . . 10

CONCLUSION . . . . . 11

# TABLE OF AUTHORITIES

*Cases*


CNA Casualty v. Seaboard Surety Co.
176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986) . . . . . . . . . . 6

Feldman v. Allstate Ins. Co.
322 F.3d 660 (9th Cir. 2003) . . . . . . . . . . 8

Montrose Chemical Corp. v. Superior Court
6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1995) . . . . . . . . . . 6

Pension Trust Fund v. Federal Insurance Co.
307 F.3d 944 (9th Cir. 2002) . . . . . . . . . . 6

Vitton Constr. Co. v. Pacific Ins. Co.
110 Cal.App.4th 762, 2 Cal. Rptr. 3d 1 (2003) . . . . . . . . . . 7

Waller v. Truck Ins. Exchange, Inc.
11 Cal.4th 1, 900 P.2d 619, 44 Cal.Rptr.2d 370 (1995) . . . . . . . . . . 5, 6


*Statutes*


Federal Rules of Evidence 702 . . . . . . . . . . 9, 10

## PRELIMINARY STATEMENT

A commercial general liability insurer's duties are dictated and limited by the terms of the insurance contract. Where uncontroverted extrinsic evidence shows that an exclusion bars coverage, the insurer owes no obligation to the insured. The Mt. Hawley Insurance Company insurance contract precludes coverage for "bodily injury" caused by "earth movement." Jaynes Corporation seeks additional insured coverage for a "bodily injury" claim resulting from wholly anticipated "earth movement" in a Wal Mart parking lot.

Mt. Hawley thoroughly investigated Jaynes' claim for coverage well before the underlying claim went into litigation. That investigation included discussing the claim with Mt. Hawley's named insured, analyzing documents prepared at the scene of the alleged loss by the named insured, and retaining a licensed professional engineer. At each step, the evidence demonstrated that the "earth movement" exclusion applied, precluding any coverage under Mt. Hawley's insurance contract with Jeff Lackey Grading, Inc.

Throughout, Mt. Hawley repeatedly offered Jaynes the opportunity to provide it with evidence that the "earth movement" exclusion did not apply. Jaynes declined to do so, presumably because no such evidence exists. Instead, Jaynes responded with blustery rhetoric about the breadth of an insurer's duty to defend. Now Jaynes has sued Mt. Hawley, hoping that sheer rhetoric can overpower the facts of the case.

Nothing better illustrates the lack of factual and legal authority supporting Jaynes' case than Jaynes' motion for partial summary judgment. <u>First</u>, Jaynes misstates the law by contending that an insurer cannot rely on extrinsic facts that conclusively demonstrate the absence of coverage. But the law states that extrinsic evidence can preclude a duty to defend just as it can create one. That is the situation here, where Mt. Hawley's named insured, documentary evidence and a licensed professional engineer's report all show that the "earth movement" exclusion applies. Jaynes has offered nothing to rebut that evidence, either before this motion or in it, and Jaynes' motion to exclude Mt. Hawley's "expert" is simply a procedurally inappropriate attempt to bar evidence that supports Mt. Hawley's coverage determination. That motion should be denied.

///

Second, Jaynes fails to support its motion with even a single piece of admissible evidence. While all of the purported evidence is inadmissible on the procedural ground that it is not properly authenticated, the larger problem with Jaynes' motion is that its key assertions have no factual support. Jaynes simply has no evidence to show that the "earth movement" exclusion does not bar coverage.

Jaynes' motion for partial summary judgment should be denied, Mt. Hawley's motion for summary judgment should be granted, and judgment should be entered in favor of Mt. Hawley and against Jaynes as a matter of law.

## FACTUAL BACKGROUND

### I. THE UNDERLYING ACTION

This declaratory relief case concerns an underlying action, Fee v. Wal Mart Corp., District Court of Nevada, Clark County Case No. A5144227, filed by Lorraine Fee ("the Fee action"). (Request for Judicial Notice ("RJN"), Exh. A.) Ms. Fee seeks damages for injuries that she allegedly suffered from falling on January 3, 2004 in the parking lot of a Wal Mart store located in Las Vegas, Nevada. Ms. Fee alleges that irregularities in the parking lot's asphalt caused her fall. (Id.)

Jaynes was the general contractor for the parking lot and Lackey was the paving subcontractor. (Id.) In her amended complaint, Ms. Fee alleges that Lackey's negligent work created the pavement irregularities that caused her injury, and that Jaynes is vicariously liable to Ms. Fee under the doctrine of respondeat superior. (Id.) Ms. Fee also alleges that Jaynes is liable for its independent negligence in hiring, training and supervising its employees and subcontractors, including Lackey. (Id.)

### II. MT. HAWLEY'S INVESTIGATION

#### A. Mt. Hawley's Named Insured Informs Mt. Hawley That The Conditions Causing Ms. Fee's Injuries Resulted From Soil Settlement

On or about March 11, 2005, Mt. Hawley received notice of Jaynes' demand that Mt. Hawley indemnify it against Ms. Fee's then pre-litigation claims. (Affidavit of Rochelle Clark ("Clark Aff."), at ¶ 2.) Mt. Hawley immediately undertook an investigation of the circumstances surrounding

///

Ms. Fee's alleged fall. (Id.) First, Mt. Hawley contacted Lackey to determine how the alleged irregularities in the parking lot asphalt arose. (Id., ¶ 3.)

Lackey informed Mt. Hawley that it was to pave a patch in the lot over a filled-in trench that had been used by the electricians. Lackey was requested to proceed with the paving job on November 19, 2003. Because of recent rains, Lackey recommended against paving until the underlying soil dried. Lackey warned Jaynes and Wal Mart that paving under the then-current conditions would result in cracked and uneven asphalt because the asphalt would shift when the soil settled. (Id.) Wal Mart — knowing that the asphalt would soon become cracked and uneven — nevertheless insisted on proceeding on that date. At that point, Lackey advised Jaynes that Lackey would require additional payment for any further work to repair the pavement. (Id., ¶ 4, Exh. B.)

A March 23, 2005 letter from Sheryl Lackey sets forth Lackey's summary of the paving job and subsequent cracking. The letter also states that the soils engineer, Michael Swenson at Kleinfelder, believed that laying the asphalt under the wet conditions was unwise. (Id.) Lackey's letter is supported by a "daily field report" entry prepared by Lackey employee Gary Handyside on November 19, 2003. The handwritten entry states that "the type II Base is to [sic] wet to pave!!!" The entry states that the decision to pave despite the conditions was made by Wal Mart. The entry also notes that "[Jaynes] & Walmart . . . agreed after Christmas to tear out any bad spot and fix at that time we would do the overlay," and that "[Jaynes] & Walmart agreed to pay for any rework." (Id., ¶ 5, Exh. C.) Ultimately, repairs to the asphalt were done pursuant to a "subcontract change order" signed by Jaynes and Lackey. (Id., ¶ 6, Exh. D.) That change order described the work as follows: "Remove and repair areas that where [sic] damaged by bad wether [sic] conditions at the time of paving: $5,544.00." (Id., ¶ 6, Exh. D.) Unfortunately, those repairs were not performed until after the date of Ms. Fee's accident.

B. Mt. Hawley Retains A Licensed Professional Engineer To Confirm That Ms. Fee's Injuries Resulted From Soil Settlement

In light of these developments, Mt. Hawley retained Barbara Malloy, a licensed professional engineer, to determine what caused the asphalt irregularities. (Clark Aff., ¶ 7.) Ms. Malloy reviewed the available records and — consistent with Lackey's warnings — concluded that the cracking was

"most likely attributable to placement of the asphalt during inclement conditions." Ms. Malloy observes, based on Lackey's November 19, 2003 field memo and independently obtained weather data for that date, that the ground below the asphalt was wet at the time of paving. Ms. Malloy concludes that the soils under the asphalt settled due to vehicular traffic. (Id., ¶ 7, Exh. E.)

C. Mt. Hawley Requests, But Jaynes Does Not Provide, Evidence Disputing That Ms. Fee's Injuries Resulted From Soil Settlement

Mt. Hawley wrote to Jaynes on July 20, 2005, explaining the application of the "earth movement" exclusion and requesting that "[i]f you have any additional facts or information or legal authority that is relevant to our coverage analysis, please forward it to me for review and analysis." Jaynes responded by letter on February 2, 2006. (Clark Aff., ¶ 8, Exh. F.) The only new information that Lackey provided in response was a copy of the recently-filed amended complaint in the Fee action. (Id., ¶ 8.)

Mt. Hawley again wrote to Jaynes and again explained the application of the "earth movement" exclusion. Mt. Hawley again requested that "should you have any documents or information that you believe demonstrates that the Earth Movement Exclusion does not apply to bar coverage, please share it with Mt. Hawley and we will consider same." (Affidavit of Andrea Dean ("Dean Aff.," ¶ 3, Exh. H.) Jaynes did not provide any new evidence in response. (Id., ¶ 3.)

III. THE MT. HAWLEY INSURANCE CONTRACT

Mt. Hawley and Lackey entered into a commercial general liability insurance contract, no. MGL 0132517, for the period August 1, 2003 to August 1, 2004. (Dean Aff., ¶ 2, Exh. G.) The insurance contract provides that Mt. Hawley will defend and indemnify the insured against suits seeking "bodily injury" to which the insurance contract applies. (Id., Exh. G, p. 0004.) Jaynes is designated as an additional insured under the Mt. Hawley insurance contract, but only with respect to liability "arising out of" Lackey's "work" for Jaynes. (Id., Exh. G, pp. 0024, 0068.)

The insurance contract includes an "Exclusion - Earth Movement" endorsement, which provides that "[t]his insurance does not apply to any claim for 'bodily injury,' . . . caused by, arising out of, relating to, resulting from, contributed to, or aggravated by any 'movement of land or earth.'" (Id., Exh. G, p. 0032.) The endorsement defines "movement of land or earth" to mean:

> movement in any direction, including but not limited to, instability, rising, upheaval, expansion, subsidence, settling, sinking, shrinkage, slipping, falling away, tilting, caving in, eroding, shifting in a horizontal or sideways direction, mud flow, mudslide or earthquake or any other movement of land or earth, regardless of the cause.

(Id.)

## ARGUMENT

The key issue is whether the "earth movement" exclusion bars coverage under the Mt. Hawley insurance contract. Mt. Hawley's investigation of the claim, undertaken well before the Fee suit was filed, demonstrated conclusively that the injuries to Ms. Fee arose out of the settling of soil or other "movement of the earth." Therefore, the exclusion for "earth movement" precludes liability coverage for those injuries.[1]

Jaynes attacks Mt. Hawley's position on two grounds. First, because Jaynes cannot challenge the application of the earth movement exclusion, it contends that extrinsic evidence known to an insurer can never preclude a defense obligation, even when that undisputed evidence conclusively demonstrates that no indemnity coverage exists. Jaynes is wrong. Second, Jaynes attacks the evidence available to Mt. Hawley. But Jaynes not only mischaracterizes the scope of that evidence; equally importantly, Jaynes offers *nothing* — no evidence whatsoever — to rebut the available extrinsic evidence. Therefore, this Court should deny Jaynes' motion for summary judgment and grant Mt. Hawley's motion for summary judgment.

### I. MT. HAWLEY PROPERLY RELIED ON EXTRINSIC EVIDENCE IN DETERMINING THAT IT HAS NO DUTY TO DEFEND JAYNES IN THE *FEE* ACTION

Jaynes devotes a great deal of its motion describing the breadth of an insurer's duty to defend, only to ultimately get it wrong. "[T]he duty to defend, although broad, is not unlimited[.]" Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 19, 900 P.2d 619, 44 Cal.Rptr.2d 370 (1995). Here, where extrinsic evidence conclusively eliminates the potential for coverage, Jaynes attempts to push the defense duty beyond its limits.

---

[1] For purposes of this motion, Mt. Hawley does not deny that Jaynes' alleged liability in the Fee action "arises out of" Lackey's work. Nor does Mt. Hawley deny, for purposes of this motion, that the Fee complaint, taken alone, contains allegations that could potentially result in damages against which the Mt. Hawley insurance contract provides indemnity.

In Montrose Chemical Corp. v. Superior Court, the California Supreme Court unequivocally stated: "We conclude that evidence extrinsic to the underlying complaint can defeat as well as generate a defense duty[.]" 6 Cal.4th 287, 291, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1995). That opinion quotes with approval the court of appeal's reasoning that "neither logic, common sense, nor fair play supports a rule allowing only the insured to rely on extrinsic facts to determine the potential for coverage." 6 Cal.4th at 298. Therefore, "where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability." Waller, 11 Cal.4th at 19.

Jaynes never suggests that Nevada law differs from California law on this issue; indeed, Jaynes states that "California law and Nevada law do not differ on the issue of an insurer's duty to defend." (Jaynes Mem. Pts. & Auth. at 7, n.20.) Montrose therefore sets forth the controlling law regarding extrinsic evidence. Apparently recognizing that the Montrose holding defeats its case, Jaynes' attempts to sidestep Montrose by citing a Ninth Circuit opinion that purports to apply California law, Pension Trust Fund v. Federal Insurance Co., 307 F.3d 944 (9th Cir. 2002).

Jaynes' reliance on Pension Trust Fund is misplaced, however. Jaynes cites Pension Trust Fund as authority for Jaynes' contention that extrinsic evidence can only create a duty to defend. While Pension Trust Fund properly cites Montrose as the controlling authority regarding the scope of an insurer's duty to defend, Pension Trust Fund then cites CNA Casualty v. Seaboard Surety Co., 176 Cal.App.3d 598, 606, 222 Cal.Rptr. 276 (1986), for the proposition that extrinsic evidence cannot defeat the duty to defend. Pension Trust Fund, 307 F.3d at 949. But the Montrose court specifically addressed CNA Casualty, a court of appeal decision that predates Montrose. Montrose dismisses as "dictum" CNA Casualty's one-sided take on extrinsic evidence, stating that CNA Casualty "does not accurately state the law in this respect." Montrose, 6 Cal.4th at 298.

The Pension Trust Fund opinion follows CNA Casualty's inaccurate statement of the law. Jaynes cites only Pension Trust Fund as authority for the proposition that extrinsic evidence cannot defeat the duty to defend. Both Jaynes and Pension Trust Fund are wrong, however; the law is clear — Mt. Hawley can and properly did rely on extrinsic evidence in determining the existence of any defense obligation.

II. THE UNDISPUTED EVIDENCE DEMONSTRATES CONCLUSIVELY THAT THE "EARTH MOVEMENT" EXCLUSION APPLIES

A. The Earth Movement Exclusion Precludes Coverage For Any Claim With A Causal Connection Between The Injury And The Earth Movement

The "Earth Movement" exclusion in the Mt. Hawley insurance contract precludes coverage for "any claim for 'bodily injury,' . . . caused by, arising out of, relating to, resulting from, contributed to, or aggravated by any 'movement of land or earth.'" "Earth movement" is defined to include "settling, sinking, shrinkage, slipping, falling away, tilting, [and] caving in[.]" Here, Fee's injuries undisputedly arose out of "earth movement" — the settlement of the soil. Jaynes admits in its motion that Ms. Fee alleges that her injuries were caused by tripping over asphalt applied by Lackey. (Jaynes Mem. Pts. & Auth. at 3:1-2.) As the leading case cited by Jaynes on this issue states, courts "have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." Vitton Constr. Co. v. Pacific Ins. Co., 110 Cal.App.4th 762, 766-67, 2 Cal. Rptr. 3d 1 (2003).

As further discussed below, the extrinsic evidence conclusively demonstrates that the asphalt irregularities that undisputedly caused Ms. Fee to fall arose out of the soil settling underneath the paving applied by Lackey. That establishes the "minimal causal connection or incidental relationship" between Lackey's work and Ms. Fee's alleged injuries. Therefore, the potential for coverage is eliminated and Mt. Hawley has no defense obligation toward Jaynes.

B. Mt. Hawley's Named Insured Stated, And Documentary Evidence Confirms, That Soil Settlement Caused The Asphalt To Crack And Become Uneven

Mt. Hawley's investigation of the circumstances surrounding Ms. Fee's alleged fall began before Ms. Fee filed suit. When first notified of the claim, Mt. Hawley contacted Lackey. Lackey's verbal account focused on how the job site's wet soil conditions led to cracking and settling of the

/ / /

asphalt. That cracking and settling in turn led to the uneven pavement that Ms. Fee allegedly tripped over.

Lackey confirmed this account by sending documentary evidence. Sheryl Lackey's letter following up on Lackey's verbal account confirms how the asphalt's irregularities arose. Lackey's field notes further confirm the condition of the soil at the time of paving. And, perhaps most damaging to Jaynes, Jaynes approved the change order to repair the cracked and uneven asphalt, which change order acknowledged the cause of the damaged asphalt. Only with this evidence in hand did Mt. Hawley elect to retain a licensed professional engineer to confirm its understanding of how the asphalt cracked.

Therefore, Jaynes' representation that the engineer's report is the only evidence Mt. Hawley relied on is simply wrong. The bulk of the evidence comes from Mt. Hawley's named insured, itself named as a defendant in the Fee action, and from Jaynes' own modification of its subcontract with Lackey. That evidence alone provides a sufficient basis for denial, especially because Jaynes never provided any contradictory evidence — not when Mt. Hawley repeatedly requested it, and not with its motion.

### C. A Licensed Professional Engineer Further Confirmed That Soil Settlement Caused The Asphalt To Crack And Become Uneven

Jaynes is also mistaken as to the weight that the engineer's report should carry. Ms. Malloy based her opinions on the same documents available to Mt. Hawley, as well as photographs of the asphalt and weather data pertinent to the conditions in the area immediately before and on November 19, 2003. Therefore, Jaynes' attempts to characterize Ms. Malloy's conclusions as speculation are ungrounded and Jaynes' pre-mature attempt to "exclude" Ms. Malloy's report as "expert testimony" is entirely misplaced.

Ms. Malloy has not been designated by Mt. Hawley as an expert for trial in this litigation. Therefore, federal law regarding the admissibility of Ms. Malloy's report simply does not apply.[2]

---

[2] Contrary to Jaynes' belief, Nevada state law has even less application. Federal evidentiary law applies in diversity actions such as this one. "Most evidentiary rules are procedural in nature, and the Federal Rules of Evidence ordinarily govern in diversity cases." Feldman v. Allstate Ins. Co., 322 F.3d 660 (9th Cir. 2003).

Ms. Malloy was retained before the underlying Fee case was filed, and well before Jaynes filed the instant action. Excluding Ms. Malloy's report based on Jaynes' contention that it would be inadmissible at trial as expert testimony would set a heretofore unknown standard for extrinsic evidence provided to an insurer. Such evidence, whether indicating the existence or absence of a duty to defend would have to meet all the requirements of admissibility at trial. No decision that Mt. Hawley has located, either federal or state, has even remotely suggested that this is the case. Indeed, carriers often assume obligations under an insurance contract based on extrinsic evidence that does not meet the strict standards required for admissibility set forth by the Federal Rules of Evidence.

But even assuming that such a rule should apply to Ms. Malloy's report, Jaynes is wrong to argue that Ms. Malloy was not competent to render her opinion. Jaynes flatly asserts that the Federal Rules of Evidence "do not allow admission of expert testimony when the expert has failed to personally inspect and test the relevant evidence necessary to provide opinions." (Jaynes Mem. Pts. & Auth. at 9:12-14.) While that may be true in specific situations, the Federal Rules of Evidence set forth much more flexible parameters. See Fed.R.Evid. 702. Rule 702 requires that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Ms. Malloy's report satisfies the requirements of Rule 702. First, contrary to Jaynes' representations, the report contains no opinion as to the cause of Ms. Fee's injuries. Rather, Ms. Malloy's report discusses what caused the asphalt irregularities that even Jaynes concedes are the alleged cause of Ms. Fee's injuries. (Jaynes Mem. Pts. & Auth. at 3:1-2.) The documents that Ms. Malloy relied on in reaching her conclusion, which included Lackey's letter and field reports, and weather data, all demonstrate that the soil was wet when it was paved. Thus, Ms. Malloy's testimony that the "[d]amage shown in the supplied photographs is typical of damage that might be expected of asphaltic concrete placed during unfavorable conditions" is entirely consistent with her competence as a professional engineer.

Moreover, Ms. Malloy's consideration of other causes bolsters her testimony, although Jaynes repeatedly suggests otherwise. "Before a conclusion on causation can be reliably drawn, the expert

must make some reasonable attempt to eliminate some of the most obvious causes." Comments to Rule 702. Ms. Malloy does just that — she considers the possibility that hairline cracks formed because of shrinkage and that a bind between the patch and the pavement may be missing. But after those considerations, Ms. Malloy states her conclusion in definite terms: "the main cause of the distress is that the base course moved due to the compactive force of the soil." Ms. Malloy's conclusion is as definite as her testimony is competent.

## III. JAYNES HAS NO EVIDENCE DEMONSTRATING THAT THE EARTH MOVEMENT EXCLUSION DOES NOT APPLY

The documents that Mt. Hawley analyzed before retaining Ms. Malloy demonstrated that the asphalt cracked and became uneven because of soil settlement. Ms. Malloy's report confirmed it. Only then did Mt. Hawley inform Jaynes that, absent evidence to show that earth movement did not cause the asphalt irregularities, no coverage existed under the Mt. Hawley insurance contract. Mt. Hawley invited Jaynes to provide such evidence. Jaynes declined to do so then, and Jaynes cannot do so in its motion.

Substantively, Jaynes' motion refers to only one document in Jaynes' attempt to rebut the mass of evidence available to Mt. Hawley. That document is a letter from Lackey's counsel to Jaynes in which Lackey's counsel suggests, without any support, that Ms. Fee's accident was caused by a failure to properly anchor a temporary ramp for the concededly uneven asphalt. (August 15, 2005 letter from Christopher Craft to Adam Breeden, Jaynes' Mot., Exh. G.) But there are three independent reasons why the letter cannot save Jaynes' motion. First, the letter contains nothing but the factually unsupported theories of Lackey's counsel, and uncorroborated conclusory statements of counsel are not evidence of anything. Second, the letter is not properly authenticated. Third, there is no evidence that the letter was ever supplied to Mt. Hawley.

As set forth above, the "earth movement" exclusion precludes coverage for "bodily injury" claims "caused by, arising out of, relating to, or aggravated by any 'movement of land or earth.'" Certainly, nothing in the letter or in Jaynes' motion shows that the condition of the asphalt was not attributable to "earth movement" as set forth in the exclusion. Jaynes simply cannot challenge the application of the "earth movement" exclusion, and its attempt to raise a phantom dispute must fail.

CONCLUSION

Mt. Hawley fulfilled its obligations to Jaynes — it investigated the nature of the underlying action. That investigation demonstrated that the underlying action raised no potential for coverage under the Mt. Hawley insurance contract. Accordingly, Mt. Hawley denied Jaynes' claim. Jaynes' attempt to create coverage by filing this motion finds no support in law or the facts of this case. Therefore, Mt. Hawley respectfully requests that the Court deny Jaynes' motion, grant Mt. Hawley's motion, and enter judgment against Jaynes and in favor of Mt. Hawley.

Dated: July 28, 2006

Respectfully submitted

MELENDEZ & VACA, LLP

By:____________________

Michael W. Melendez
Nevada Bar No. 6741
1850 Mt. Diablo Blvd., Suite 440
Walnut Creek, CA 94596

David Mincin, Esq.
Richard McKnight, P.C.
300 South Third Street, Suite 900
Las Vegas, NV 89101

Attorneys for Defendant MT. HAWLEY INSURANCE COMPANY